# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DISCOVER GROWTH FUND, LLC, a U.S. Virgin Islands limited liability company,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BEYOND COMMERCE, INC., a Nevada corporation,<br><br>　　　　Defendant. | Case No.: 3:21-cv-00328-MMD-CLB<br><br><br>**MEMORANDUM　AND ORDER** |

The Motion for Approval of Stipulation for Settlement of Claims (Doc. 7) ("Motion") filed by Plaintiff DISCOVER GROWTH FUND, LLC ("Plaintiff" or "Discover") came on for hearing on November 17, 2021 before the Honorable Miranda Du, U.S. District Judge. The Court, having been presented with a Settlement Agreement between Plaintiff and Defendant BEYOND COMMERCE, INC. ("Defendant" or "Beyond Commerce") (Doc. 7-4), considered the Motion and supporting and responding papers, Declaration of John Burke (Doc. 7-1), Defendant's Non-Opposition (Doc. 8), Declaration of Peter M. Stazzone (Doc. 9), and arguments of counsel, conducted a fairness hearing on the Motion as set forth in the Settlement Agreement, and good cause appearing therefor, the Court grants the Motion for the reasons explained below.

//

//

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court makes the following Findings of Fact, Conclusions of Law, and Order.

**FINDINGS OF FACT**

Plaintiff Discover is an institutional investor. (Doc. 7-1 at ¶ 4.) Defendant is a Nevada corporation. (Doc. 9 at ¶ 1.) Defendant is a company operating in two markets: (1) the business-to-business internet marketing technology and services market; and (2) the information management market, in developing proprietary software for digital transformation of clients' existing content. (*Id.* at ¶ 3.) Its stock is publicly traded on the OTC Markets under the trading symbol "BYOC."

Beyond Commerce issued to Discover a Senior Secured Redeemable Convertible Debenture with an initial face value of $2,717,391.30 on August 7, 2018 (the "Debenture"), in exchange for an aggregate of $2.5 million in cash. (Doc. 7-4 at ¶ 1.) The Debenture was convertible into shares of Defendant's common stock, at a discount to the market price based upon a variable pricing formula. (*Id.*) Beyond Commerce then filed a resale Registration Statement with the U.S. Securities & Exchange Commission, for the shares of common stock issuable to Discover upon conversion of the Debenture, which became effective on February 7, 2019. (*Id.*)

The parties entered into an Exchange Agreement on March 19, 2021, pursuant to which they exchanged the Debenture, which then had a face value of $1,556,905.00, for 1,556,905 shares of Beyond Commerce Series C Convertible Preferred Stock. (Doc. 7-4 at ¶ 1.)

Discover entered into a Stock Purchase Agreement with Beyond Commerce on March 31, 2021, pursuant to which it purchased an additional 10,000 shares of preferred stock for $1 million in cash. (Doc. 7-4 at ¶ 2.) (The Exchange Agreement and Stock Purchase Agreement are referred to collectively as the "Agreements.") Under the Agreements, Beyond Commerce is required to maintain a reserve of 15.56 billion shares of common stock for issuance to Discover upon conversion of the preferred stock. (*Id.*)

Plaintiff asserts claims against Defendant relating to the Agreements. (Doc. 7-4 at ¶ 5. *See also* Doc. 1.) Within these Agreements, Defendant represented there were no claims, litigation, or other similar matters pending against Defendant at the time the Agreements were entered into.

(Doc. 7-4 at ¶ 2.) Plaintiff discovered, after entering into the Agreements, that a third party had in fact put Defendant on notice of the third party's claim against Defendant. The third party later filed a lawsuit against Defendant based on such claim. (Doc. 7-4 at ¶ 3.)

Defendant has acknowledged that the claims held by Plaintiff are bona fide outstanding, resulted from arms-length agreements negotiated in good faith, and that the amounts being settled are currently due debts arising in the ordinary course of business. (Doc. 9 at ¶ 5.) Defendant further acknowledges that it is obligated to pay the full amount of the claims without counterclaim or right of offset. (*Id.*)

Plaintiff and its U.S. attorneys, advisors, and representatives have worked cooperatively with Defendant and its attorneys and advisors to reach a mutually-beneficial agreement. (Doc. 9 at ¶ 6.) The parties have entered into a settlement agreement to settle the outstanding claims in exchange for stock, subject to Court approval following a fairness hearing. (Doc. 7-4.) (The terms and conditions of the settlement are set forth in the Settlement Agreement (Doc. 7-4) filed in this action.) Defendant's CEO and board of directors have determined that the settlement is fair to Defendant and in the best interests of its stockholders. (Doc. 9 at ¶ 6.)

Trading in Defendant's shares is volatile and unpredictable. (*Id.* at ¶ 8.) Over the last year, the trading price and volume for the shares have fluctuated substantially. (*Id.*; Doc. 9-1.)

Plaintiff is a highly sophisticated institutional investor who regularly enters into transactions of this type, and is fully aware of the significant risks in exchanging debt for common equity of a small public company that has substantial doubt as to its ability to continue as a going concern. (*See* Doc. 7-1 at ¶ 15-16.) Plaintiff can afford a complete loss of its investment and is willing to accept that risk, provided Defendant abides by the terms of the Settlement Agreement. (*Id.* at ¶ 15.) If Defendant succeeds and performs, there is the potential for Plaintiff to fully recoup its investment and possibly generate a sizable return. (*Id.* at ¶ 10.) Plaintiff is receiving shares that it should be able to sell for more than the amount of the claims. (*Id.* at ¶ 15.) Plaintiff has analyzed the provisions of the Settlement Agreement, company fundamentals and market dynamics, and determined that the negotiated agreement is fair and reasonable, and adequate to settle its claim. (*Id.* at ¶ 11.)

## CONCLUSIONS OF LAW

### I. Proposed Settlement

The parties have agreed to settle this case pursuant to a Settlement Agreement which requires Defendant to issue 72,638 shares of its preferred stock to Discover. (Doc. 7-4 at ¶ 1.) Because payment for the settlement of Plaintiff's claims against Defendant will be in the form of unregistered shares of preferred and common stock, court approval is required under Section 3(a)(10) of the Securities Act of 1933, 15 U.S.C. § 77c(a)(10), and the comparable provision of Nevada state "blue sky" law, NRS 90.280(6)(c). *See Oceana Capital Grp. Ltd. v. Red Giant Ent., Inc.*, 150 F. Supp. 3d 1219, 1222 (D. Nev. 2015).

### II. Jurisdiction and Venue

This court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2), because the amount in controversy exceeds $75,000.00 and the action is between citizens of different states. *See* 28 U.S.C. § 1332(c)(1), *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). Defendant is a Nevada corporation. Plaintiff is a limited liability company based in the United States territory of the Virgin Islands. *See* 28 U.S.C. § 1332(e) ("The word 'States,' as used in this section, includes the Territories"). Venue lies in this district under 28 U.S.C. § 1391(b)(1), (c)(2) and (d). *See Pacer Global Logistics, Inc. v. Nat'l Passenger R.R. Corp.*, 272 F. Supp. 2d 784, 788 (E.D. Wis. 2003).

### III. Application of the Exemption

Generally, public companies are not permitted to issue their stock without first filing a registration statement nor are persons receiving it permitted to immediately resell the shares into the public markets. *See* 15 U.S.C. § 77e(c), 15 U.S. Code § 77d(a)(1). Section 3(a)(10) of the Securities Act provides an exemption for

> any security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly in such exchange and partly for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court . . . .

15 U.S.C. § 77c(a)(10).

The Section 3(a)(10) exemption is often used to effectuate settlements of claims against public company defendants. *See, e.g., Oceana Capital*, 150 F. Supp. 3d at 1219; *Chapel Invs., Inc. v. Cherubim Ints., Inc.*, 177 F. Supp. 3d 981, 987 (N.D. Tex. 2016); *YA II PN, Ltd. v. Taronis Techs., Inc.,* 435 F. Supp. 3d 622 (S.D.N.Y. 2020), *citing In re Tripath Tech., Inc., Sec. Litig.*, No. C 04 4681 SBA, 2006 WL 1009228, at *2 (N.D. Cal. Apr. 18, 2006) ("The Settlement Shares are to be issued in exchange for bona fide outstanding claims; all parties to whom it is proposed to issue such securities have had the right to appear at the hearing on the fairness of the Settlement; and the Settlement Shares are therefore unrestricted and freely tradeable exempted securities pursuant to Section 3(a)(10) of the Securities Act of 1933, 15 U.S.C. § 77c(a)(10).").

For the exemption to apply, the court must: (1) find that the person to receive shares holds securities, claims or property interests that were outstanding prior to the hearing, (2) conduct a fairness hearing at which all persons to whom the securities will be issued has the right to appear and be heard, and (3) find that the terms and conditions of the proposed exchange are fair. *See Chapel Invs.*, 177 F. Supp. 3d at 987. "Fundamentally, the court must find the proposed issuance and exchange of securities is fair after considering the totality of the evidence." *Oceana Capital*, 150 F. Supp. 3d at 1224.

### IV.     Fairness of the Proposed Exchange

Here, the parties have entered into the Settlement Agreement to settle the outstanding claims in exchange for stock, subject to Court approval. The terms and conditions of the settlement are fully set forth in the Settlement Agreement. (*See* Doc. 7-4.) Defendant will issue an additional 72,638 shares of preferred stock to Plaintiff in settlement of the outstanding claims. (*Id*. at ¶ 1.)

Given Beyond Commerce's small market capitalization, the settlement will result in significant dilution. *See Crown Bridge Partners, LLC v. Sunstock, Inc*., No. 18 CIV. 7632 (CM), 2019 WL 2498370, at *1 (S.D.N.Y. June 3, 2019) (when convertible securities are issued, "the stock price will almost certainly drop, because the supply of shares available for purchase in the market increases"). However, Discover has been selling shares of Defendant's stock for approximately three years in a manner designed to maximize its total economic return on investment by mitigating the negative price impact to the extent practicable, including directing

trades to alternative trading systems which allow institutional investors to trade without exposure until after the trade has been executed, and reported to avoid disclosing their selling strategies to the market and pushing the price down, and adjusting the number and percentage of shares sold based on daily supply and demand.  (Doc. 7-1 at ¶ 9.)  *See also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 106 (2d Cir. 2007) (convertible security is not manipulative, even when coupled with selling).  In addition, the alternative to settlement for Defendant is to incur a monetary judgment it cannot afford to pay or file bankruptcy.

Discover is an investment fund fully aware of the significant risks involved.  (Doc. 7-1 at ¶ 15.)  Discover has invested in convertible securities of many small public companies, which it has converted into billions of shares of common stock that it resold into the public markets.  (*Id*.)  Plaintiff can afford a complete loss of its investment, and is willing to accept that risk, provided Defendant abides by the terms of the Settlement Agreement.  (*Id*.)  If Beyond Commerce succeeds and performs, there is the potential for Plaintiff Discover to achieve a sizable return.  (Doc. 7 at 7.)  Discover is receiving preferred stock that converts at a substantial discount to the market price, and it should be able to sell the common shares for more than the amount of its claims.  (Doc. 7-1 at ¶ 10.)

Plaintiff is "a sophisticated investor, not in need of the protections afforded by registration."  *See Ackerberg v. Johnson*, 892 F.2d 1328, 1337 (8th Cir. 1989); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 215 (3d Cir. 2006).  Plaintiff has conducted an independent market analysis for Defendant's securities, and understands both the upside potential and the downside risks inherent in the settlement.  (Doc. 7-1 at ¶¶ 11, 15.)  Similarly, Defendant is a public company whose Chief Financial Officer and board of directors have reviewed the Settlement Agreement with counsel.  (Doc. 9 at ¶ 10.)  These factors are sufficient for the Court to find the negotiated agreement between commercial parties is fair.  *See Chapel Invs.*, 177 F. Supp. 3d at 987.

### V.     Consideration of Registration Requirements

If the Court approves the exchange as fair, Defendant will not be required to register its shares under Section 5 of the Securities Act, 15 U.S.C. § 77e, because the shares to be issued will

be entirely exempt from the Securities Act. *See* 15 U.S.C. § 77c(a)(10), *Oceana Capital*, 150 F. Supp. 3d at 1225.

In addition, Plaintiff is not required to register as a dealer under Section 15(a) of the Exchange Act, 15 U.S.C. § 77o(a), because Discover is a private investor or trader, rather than a dealer. *Oceana Capital*, 150 F. Supp. 3d at 1226.

The plain language of the statute provides that the term "dealer" does not include a party who buys or sells securities for its own account "but not as a part of a regular business." *See* 15 U.S.C. § 78c(a)(5)(B). The primary meaning of the term "regular" is "usual; normal; customary." *See* Dictionary.com (2021). The term "regular business" as used in subsection (B) means "the regular business of providing dealer services to others . . . , such as soliciting investor clients, handling investor clients' money and securities, [and] rendering investment advice to investors." *See Chapel Invs.*, 177 F. Supp. 3d at 990. These services "distinguish the activities of a dealer from those of a private investor or trader." *In the Matter of Sodorff*, 50 S.E.C. 1249, 1992 WL 224082 at *5 n.27 (Sept. 2, 1992); *Louis Dreyfus Corp*. (SEC No-Action Letter), Fed. Sec. l. Rep. P 78,526, 1987 WL 108160 *2 (July 23, 1987).

The plain language "part of a regular business" means that "a dealer must be engaged in the securities business, <u>and</u> be buying and selling for his own account." *See Sodorff*, 1992 WL 224082, at *5 (emphasis added). In *Sodorff*, Sodorff was deemed a dealer because he "solicited investors and handled their money and securities, rendered investment advice, and sent subscription agreements to investors for their review and signature, all of which are characteristics of dealer activity." *Id*. Discover does not engage in any of these dealer activities. (*See* Doc. 7-1.) If it were possible for an entity whose only activities are buying and selling securities to be a dealer, the statute would have said "all or part of" rather than "part of." *Cf., e.g.*, 18 U.S.C. § 1955(a) ("all or part of" a business), 11 U.S. Code § 1322(b)(8) ("all or part of" a claim). "A person who buys and sells securities for his own account in the capacity of a trader or individual investor is generally not considered to be engaged in the business of buying and selling securities and consequently, would not be deemed a dealer." *Chapel Invs.*, 177 F. Supp. 3d at 990. *See also National Council of Savings Institutions* (SEC No-Action Letter), 1986 WL 67129, at *2 (July 27,

1986) (describing the list of factors that make someone a "trader" rather than someone "engaged in the business" of buying and selling securities as a dealer).

Brokers and "dealers effect securities transactions for customers, for which they typically charge a commission or other transaction-based fee." *XY Plan. Network, LLC v. United States Sec. & Exch. Comm'n*, 963 F.3d 244, 248 (2d Cir. 2020). "Dealers regularly purchase or sell securities to their customers in the ordinary course of their trade or business." See Topic No. 429, Traders in Securities. "Dealers are distinguished from investors and traders because they have customers and derive their income from marketing securities for sale to customers or from being compensated for services provided..." *Id*. Whereas a dealer buys and sells securities from its customer and to its customer for a small fixed commission, investors like Plaintiff buy securities directly from issuers like Defendant, often at a substantial discount, and then resell them into the public market for a variable but potentially large profit. *Id*.

Accordingly, Discover should not be required to register as a dealer due to its participation in the negotiation of the settlement of its claims, the exchange of the claims for shares of stock pursuant to court approval, or the resale of the shares on the open market. *Oceana Capital*, 150 F. Supp. 3d at 1225-26; *Chapel Invs.*, 177 F. Supp. 3d at 989-90.

**ORDER**

In consideration of the foregoing Findings of Fact and Conclusions of Law,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Settlement Agreement (Doc. 7-4), incorporated herein by reference, is adopted and approved in its entirety;

2. The Court was advised prior to the hearing on the Motion for Approval of Stipulation for Settlement of Claims, that Defendant would rely on the exemption of Section 3(a)(10) of the Securities Act of 1933, as amended, 15 U.S.C. § 77c(a)(10), and NRS 90.280(6)(c) (Doc. 9 at ¶ 9);

3. Plaintiff Discover holds bona fide outstanding claims, the terms and conditions of the exchange of the claims for shares of preferred stock of Defendant Beyond, as set forth in the Settlement Agreement, are approved after a hearing upon the fairness of such terms and conditions

at which Plaintiff Discovery, the only person to whom it is proposed to issue securities in such exchange, had the right to appear;

    4.    Defendant Beyond shall forthwith issue to Plaintiff Discover unrestricted and freely tradeable shares of its preferred stock as stated in the Settlement Agreement;

    5.    Defendant Beyond is not required to register the shares of its preferred and common stock to be issued pursuant to the Settlement Agreement, because they are exempt from the Securities Act pursuant to Section 3(a)(10) thereof;

    6.    Plaintiff Discover is not required to register as a dealer under Section 15 of the Exchange Act, because it is a private investor or trader rather than a dealer under 15 U.S.C. § 78c(a)(5)(B); and

    7.    The Settlement Agreement having been approved, this action shall be dismissed with prejudice in its entirety.

**IT IS SO ORDERED.**

DATED: November 17, 2021

                                     Hon. Miranda M. Du
                                     U.S. District Court Chief Judge

Proposed order submitted by:

                                     ROBERTSON, JOHNSON,
                                     MILLER & WILLIAMSON
                                     50 West Liberty Street, Suite 600
                                     Reno, Nevada  89501

                              By:    */s/ Jarrad C. Miller*
                                     Jarrad C. Miller, Esq.
                                     Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b) and Local Rule 5-4, I hereby certify that I am an employee of Robertson, Johnson, Miller & Williamson, over the age of eighteen, and not a party to the within action. I further certify that on the 19th day of October, 2021, I electronically transmitted the foregoing [PROPOSED] MEMORANDUM AND ORDER to the following:

Aaron D. Shipley, Esq.
McDonald Carano LLP
2300 W. Sahara Avenue, Suite 1200
Las Vegas, NV 89102
ashipley@mcdonaldcarano.com
*Attorney for Defendant*

                                        */s/ Teresa W. Stovak*
                                        An Employee of Robertson, Johnson,
                                        Miller & Williamson